Good morning, Judge Paez and Judge Tashima and Judge Friedman, Mary Ann Yagman, appearing for the appellants, Estate of Sydelle Rich and Estate of William Smollick. In this case, the government always knew and admitted in 2008 that the defendant currency was not forfeitable and filed this forfeiture action to in effect get a prejudgment attachment for the trustee, the appellee here. The currency never was properly subject to forfeiture. And to back that up, there was a proposed settlement letter from the government to the Estate of Sydelle Rich. I don't understand what you're trying to do here, to be honest with you. You're trying to unravel the settlement? The settlement never should have taken place. Well, it did. And it was approved by the bankruptcy court, right? And it was approved by the district court. The fact that it was approved by the district court And the money was dispersed, correct? Yes. But nonetheless, the estates had a claim. It was ignored. And the government voluntarily dismissed much later than it should have. And the estates shouldn't It did, but the estates did not have any duty or obligation to appear in the bankruptcy case. It was in this case, both estates had made claims. But isn't what happened here that the estates recognized Mr. Yagman's interest in the currency And everybody knew Mr. Yagman was in bankruptcy court. And there were creditors in the bankruptcy court. And the bankruptcy judge was going to give the money to the creditors that the estates had recognized Mr. Yagman had an interest in. And before the bankruptcy judge did that, everybody who might have a contrary interest had a chance to file objections. And the estates filed objections and for some reason withdrew the objections. It may have, but that doesn't mean that in this action it gave up its claims and it didn't. Ms. Yagman, though, it does go to this issue, which you haven't discussed, because the estate, in effect, disclaimed any interest. What's the estate standing? It has no interest in the proceeds anymore, right? Well, it doesn't say it didn't have any interest. It said that Mr. Yagman had an interest. Well, Mr. Yagman has an interest, but the state doesn't. But his interest was contingent upon the estates being probated and an order being made by the probate court ordering him to get whatever was in the estate. Well, wait a minute. Wait a minute. But the estate, I mean, flat out, without condition, you know, recognized Mr. Yagman's interest, right? I beg your pardon, Your Honor? I say it recognized Mr. Yagman's interest in the funds. Yes. Right? So you, I mean, you abandoned your claim. Isn't that, I mean, you have no longer, you have no longer any interest in the funds, you meaning the estate. Well, I don't believe that by recognizing what was quite, what Mr. Yagman's interest in the, in the monies, which were monies that belonged to the estates. Except the estate says, no, we recognize Mr. Yagman's interest. Didn't, isn't that what the estate said? Recognizing, I would say again, recognizing an interest in the estates, in the estates in the currency, which belonged to the estates and couldn't belong to anyone else until the probate court administered the estates and dispersed the monies, is a very different matter from saying. Well, I mean, let's be realistic. I mean, what would happen if, for instance, if things went your way, say yes, this money belongs to the estate, what happens to the money then? The estate has to give it to Mr. Yagman, right? No, it first has to have it probated. But they have to give, ultimately they have to give it to Mr. Yagman, right? Not all of it, there are attorney's fees for the executor, there are other, possibly other expenses there, and, you know, who knows what he would ultimately get. But that it doesn't, he was, that doesn't give complete ownership to him until the estates were probated, and they never were, because the money was essentially handed over to the trustee in this case. I just don't see that it's the same type of situation that you normally get. And not only that, the government itself acknowledged very early on that the currency in question belonged to the estates, who were innocent owners of it. Yes, and that is way back when, in 2008. That never changed here. I still don't understand why the estates didn't pursue their interest in the currency in the bankruptcy court. Well, I don't think it's really something that is really right, is before the court right now. I think once before the court, it didn't, and, you know, anytime you pursue anything, it's costly. So what's the relief you're seeking in this case? I believe that the trustee should be disgorged of the monies of the currency that belong to the estate. This case is the forfeiture case? No. Well, it started out as a forfeiture case, and this is a forfeiture case. Right. And monies were turned over to the trustee. The bankruptcy trustee. The bankruptcy trustee, who's appearing in this case, okay, as a claimant. There's a claimant in the forfeiture proceeding. Right. It was turned over to, I'm calling him the trustee, or Mr. Kittay, sort of generically, but basically it was a claimant. In this case, it was turned over to him, and it should not have been because he never, it never was forfeitable funds. Well, it was put, it was turned over to him because it was part of Mr. Yagman's bankruptcy estate, correct? But it couldn't have been because it could not have been a part of it. I thought the whole source of the dispute was that Mr. Yagman had possession of the money or had control of the currency at the time he filed bankruptcy. But that wouldn't. And he didn't disclose the $250,000 on his bankruptcy papers, correct? But that wouldn't make it his money. No, I'm just saying, but there was a claimant. But, you know, the bankruptcy estate, well, I assumed that the $250,000 was part of his estate that should have been disclosed in the bankruptcy proceeding. But that might have prompted the government to originally file this case. When it looked into it, and I would like to quote from that letter that it wrote to the estate and to, of Sidell Rich and to Raymond Smollick, it said that it would have dismissed the case if it had come to an agreement with Mr. Smollick, which imposed all sorts of draconian terms. But one of the things that it said was that it would dismiss this case, and it expected to argue that the trustee's, it called him the trustee, the claimant trustee's claims is barred because the trustee stands in the shoes of Yagman, in other words, who is not an innocent owner of the funds, and that the trustee lacks statutory standing as a result of timely, failing timely to file an answer. And that's SCR 4-5. The point being that the government itself recognized that these funds were not properly forfeitable and never should have been, and that should have been the end of the case. That should have been the end of, absolutely the end, because they weren't forfeitable funds. And so the fact that it wasn't turned over to the estate of Sidell Rich and to Mr. Smollick while he was still alive, then they just keep it standing there. Mr. Yagman, the sole beneficiary of these two estates, Mr. Smollick and Mr. Rich, or Ms. Smollick and Mr. Rich, he was going to get, he was going to take monies under their wills. And his money is subject to the rights of the creditors in bankruptcies, and we defrauded. Well, first of all, the actually, he, I'm not sure what the court's question is. It seems to me, I mean, either it's moot or it's race judicata or something. We're talking about a pot of money that after these two individuals died, Mr. Yagman was entitled to, and the bankruptcy court decided that he owed more than that to his creditors. So they were entitled to it before he took anything under it. And you had the opportunity to voice objection to that in the bankruptcy court, and you chose not to or you withdrew your objections. So other than the fact, the only thing I hear you saying is, but it's a matter of timing, and the estate should have been probated first so that funeral expenses and attorney's fees or whatever would have come out of the money before the remainder went to the bankruptcy court to pay off Mr. Yagman's creditors. It's the estate's opinion that this money continued to belong to the estate and that you couldn't just ignore that fact. And I would like to reserve my time to respond to any questions. That's fine, Ms. Yagman. Thank you. Good morning, Your Honors. Helen Fraser appearing on behalf of David Kittay, the Chapter 7 bankruptcy trustee. And I think the court does understand the trustee's arguments. It is extremely disingenuous to argue that Stephen Yagman's interest in this estate or these estates is different and separate and apart from the interest of the appellants. On December 11, 2013, Mr. Yagman filed his notice of interest with the district court. In the forfeiture proceeding? These are forfeiture proceedings. That's correct. And Mr. Kittay filed his notice of interest earlier than that claiming that these were funds that should be property of Mr. Yagman's bankruptcy estate. After that, once Mr. Yagman filed his notice of interest, he essentially took over the estate's position and he actively litigated all of these claims that are raised in the appeal. He litigated the issue of whether the district court had jurisdiction over the forfeited funds. He filed motions for summary judgment. He basically took the position of these estates all during the pendency of the forfeiture case. So I don't think that he can now argue that the interest of the estates is different. So was his position, though, he was the beneficiary of the two estates, correct? He was the sole beneficiary. Was he litigating as the beneficiary or was he? He was litigating. Or was he litigating as the executrix of the two estates? He was litigating as the beneficiary. That was his notice of interest. If he had not done that, he would not have been allowed. Did you ever see the estate documents, the trust documents? No. Do we know who the executrix is or who's in charge of the estates? I do not. The only thing that we did see was the notice of his interest that he filed, that that was the only thing that gave him authority to litigate these issues on behalf of the estates. If he had not filed that, he would not have been able to participate in the forfeiture case at all because the court and the government recognized that there were two claimants to these funds, the estates and Mr. Kitte. And nobody else would have had standing to litigate these issues. And then what occurred is Mr. Yagman decided to settle the case, and he had to have settled the claims of the estates as well as his claim. And the settlement did provide that the funds were to be paid to the bankruptcy trustee. The bankruptcy trustee, the settlement was subject to bankruptcy court approval, which is why the dismissal of the forfeiture case with prejudice. I assume it's the estate's position that it's not bound by the settlement Mr. Yagman made, right? Well, Mr. Yagman... And your position apparently depends on some notion that it should be bound. It means the estate should be bound by what Mr. Yagman did, right? Mr. Yagman represented at the settlement hearing that he... that all of the claimants to those proceeds were present. He effectively... That could have been accurate and it could have been inaccurate. Well, but the... The question is, was he authorized to speak on behalf of the estate? He represented to the court that he was, or the settlement would not have been entered into because... So that makes the settlement binding on the estate because he made the representation? Yes, it does. What's the authority for that? Well, he's now trying to change his position. Well, he's not even a party to the suit. He's not changing it. It's the estate that's making the claims and the assertions. But he took over the interest of the estates. I recognize that. Or he would not have been able to enter into the settlement, and the settlement would not have happened other than his representation that he was binding these estates. Well, your position then depends on what everybody, including this court, being bound by Mr. Yagman's representation? Yes, the settlement... And what's the authority for that? Well, the settlement could not have occurred if... I know that, but what's the authority to say what he said at the settlement conference that binds the Knapson party? His notice of interest in the estates. He took over the position of the estates. What do you mean by... What's the notice of interest? The notice of... Where is it in the record? It's the appellant's record, page 43. Page 43? Page 43 says... Okay. ...please take notice that claimants, Estate of Siddell Rich and William Smolik, give notice that they recognize the interest of claimant Stephen Yagman. Mr. Borstein signs for the estates of Rich and Smolik. It appears that Yagman signs for himself. And that document is what gave Mr. Yagman the right to litigate the claims of the estate and to settle the claims of the estates, which he did. And then the agreement to voluntarily dismiss the lawsuit brought by the United States says that the claimants of these estates of Rich and Smolik and Stephen Yagman, who are adverse parties who have appeared in this action, hereby stipulate that they agree to voluntarily dismiss the action by the plaintiff, that is, by the United States. That's signed by Mr. Borstein for the estates. Mr. Maddox, I guess, is the United States. No, not. And Mr. Yagman. And then it says, Kittay has not appeared in this action. So where is Yagman speaking for the estates? Well, he's speaking for the estates because he took over their position in his notice of interest. Well, you say took over. I mean, what does this ñ in the notice is a phrase, they, meaning those estates, they recognize the interest of claimant Yagman, right? What does that mean, to recognize the interest? What's the legal meaning of that phrase? Does that mean the estate is disclaiming 100 percent of any interest it has in? I believe it does, Your Honor. That's what was represented to the district court. I know that, but that's not what this notice says. But that's what was represented to the district court, or the settlement never would have occurred. What do you mean by represented? Is there some transcript of the representation? Well, there was, again, at the time of the settlement, Mr. Yagman represented, he basically states that the signers to the agreement, including Yagman, constitute all of the current parties to the case. I know that, but he's making that representation on behalf of himself. How can that bind the estate? Because the only two claimants to the forfeited funds were the estates and Mr. Kittay. So by Mr. Yagman stating that – If those were the only two claimants, what was Mr. Yagman even doing there at the settlement conference? Because he took over the position of the estates. That was the only reason he was there. Well, it seems to me if the estate claims were being settled, I mean, the sensible thing is to have somebody from the estate at the settlement, or sign the settlement agreement, right? Mr. Yagman was there on behalf of the estates. That was the only reason he could possibly have been there. And does he say, I'm signing this on behalf of the estate as well as myself and K.D. Maddox? No, he doesn't. He basically took over the estate's interest. I know that's your position, but what document is there in the record that indicates that? His notice of interest. I get back to my question. What does it mean that the estates recognize the interest of Yagman? What does that mean to recognize the interest? Well, we know you're making a claim. Is that what it means? It means that he is the interested party, that he is the real party in interest. Now, is there some – can you cite me some – maybe a probate case, some case that says the phrase recognize the interest is a term of art that means that? I don't know of any specific case that does that, but that was the representation he made to the district court. Because if he had not made that representation to the district court, the settlement wouldn't have occurred, and he would not have been able to advocate the interests of the estates in the many motions he filed during the forfeiture case. He effectively advocated the estates' interest throughout the case, and then he settled the estates' interest. So he represented to the court that he had that authority on behalf of the estates. Again, the only two claimants to the funds were the estates and Mr. Kittay. So he had to have been the participant on behalf of the estates because there was no other interest that he had. I'm still trying to – we're in the forfeiture proceeding, correct? That's correct. And the estates are trying to set aside the district court's dismissal of the forfeiture proceeding. That's correct. What could they possibly accomplish by doing that? Well, we believe that this appeal is moved, that there is nothing that can be accomplished by doing that. At this point, the funds have been paid to the bankruptcy trustee. The bankruptcy trustee filed his notice of distribution. The estates objected to the distribution and then withdrew their objection, and the bankruptcy court ordered the funds dispersed. And the funds are gone. They've been dispersed to the creditors of Mr. Yagman's bankruptcy estate. So there is nothing that could be accomplished by vacating the dismissal. Could the estates try and claw back the money in the forfeiture case? I don't believe they can. And one of the reasons is that there were actually two forfeiture proceedings. There was this forfeiture proceeding, which involved the currency, and there was a separate forfeiture proceeding involving a residence in Venice that Mr. Yagman also claimed an ownership interest in. The settlement, in exchange for the release of the currency into the bankruptcy estate, the trustee gave up his right to claim an interest in the residence. And both cases were dismissed with prejudice. So if there was a clawback, the trustee should be able to have the right to go back against that residence that was essentially given back to Mr. Yagman as part of this settlement. I see. So the remedy of the clawback, first of all, the clawback would be against parties that are not part of this appeal. I mean, they're not here. They've received the funds. I don't think that— In the bankruptcy proceeding, how were the funds distributed? They were distributed. There was a proposed distribution report, a trustee's distribution report. It was approved by the judge in the bankruptcy case, and then the funds were sent out to the creditors that filed claims. It all went to the creditors and to the participants in the bankruptcy proceeding. The participants. Administrative expenses. Yes, administrative expenses to the trustee and his counsel and to the creditors in the case. And none of them are parties to this proceeding. So I don't see how setting aside the dismissal would have the effect of getting that money back into the forfeiture case. I think that's an impossibility so that this court would not be able to— Let me ask this just for clarification. So when the settlement was signed in this forfeiture case to the funds, right? Yes. And then approved by the court, was there then a further order of the court releasing the money to the bankruptcy trustee or something like that? There was an approval of the settlement in the bankruptcy court by the bankruptcy court judge. I know that, but did the bankruptcy court always hold the money? No, the money was being held by the government. All right, so my question is, so then was there some transfer, some order transferring the money from the government to the trustee? Once the settlement was approved by the court and the case, the forfeiture case was dismissed, the government transmitted the money to the bankruptcy trustee. It could no longer hold it because the forfeiture— To the bankruptcy trustee. And then pursuant to that transfer then that the trustee made a distribution with the approval of the bankruptcy judge. That's correct. So when the district judge in August of 2014 granted the motion of the government to dismiss the forfeiture complaint, its forfeiture complaint, it retained jurisdiction over the claims of the competing claimants. That's correct. Mr. Cattay and Mr. Yagnon. And then what was the next thing that the district court did? Because it retained jurisdiction for a period of time, but then what happened? It retained jurisdiction up until the settlement was approved and the case was dismissed, and then pursuant to the settlement the government— So that's the settlement agreement followed by the stipulation of dismissal in October? That's correct. And thereafter, as part of that agreement, the government transmitted the funds to Mr. Cattay. The stipulation of dismissal, which is the record, page 53, is there a separate document called the settlement agreement that's in here somewhere too? No, the settlement was placed on the record under seal in the forfeiture case. Okay. Thank you, Your Honor. Okay, thank you. Thank you. Ms. Yacker. With respect to document 190, all that could be said about that is that the executor— What is document 190, please? I'm sorry, which had to do with the notice of claimant's estate, and it's ER 43. All that could be said of that document is that the executor of the estate, Leon Bear Borstein, recognized the interest of claimant Stephen Yagman, and it says no more in the defendant race, and it says nothing more or less than that. It doesn't, didn't. Well, I'll ask you the same question I asked Ms. Fraser. What does that mean, recognize the interest of claimant Yagman? Well, my understanding is that Mr. Yagman had made a motion to intervene in the case, and the basis for it was he had an interest in the currency by virtue of the fact that he was the chief beneficiary of the estates. So he's saying I'm the beneficiary of the estate. Isn't that what he's saying? I'm the beneficiary of the estate, so if any money comes to the estate, it's mine. Well, that would be determined by the probate courts, not by him. Nonetheless, he could. No, I'm saying that's what this phrase means, recognize the interest of the claimant. It means that he's part of, and I think the wills set forth in one of the excerpts of record, supplemental excerpts of records that showed that he had, he was a beneficiary, the beneficiary of the estate if he didn't die. Well, all it's doing is saying, well, we recognize that under the will of whoever it is Mr. Yagman is a sole beneficiary. It doesn't say sole. He's not the sole beneficiary. But the bottom line is that he would have had no other basis for being able to intervene in order to become a claimant, and the district court ruled based on that, and it's August States 2004, order that he was a claimant and basically just left out the estates and ignored them and said there were just two claimants in the estate. And that's document 251ER46. And just basically ignored the fact that the estates always had an interest and never could not have an interest, and the money was always there. And it's too late to go into jurisdiction, but I think this is the type of case where, you know, Martin Lane should be extended to this situation where there should have been a voluntary dismissal. There was, in fact, at the very end of the case by the government because there was nothing to forfeit because the funds were not forfeitable. So I think that's the bottom line with respect to that. So what do you hope to accomplish here if the estates were to prevent? Well, you know, I heard a lot. First of all, $290,000 went to Mr. Kittay, which is a lot of money for very little done by the looks of it, and that money should be disgorged. And the balance of the money is $40,000. I think Mr. Yagman had to kick in. So the balance of maybe $20,000, $30,000 went to other claimants for all this work. He gets $290,000, and I think that that should be the result, that he should be disgorged of that money. He didn't get it because there was no Mr. Yagman. And that money would then go to the estates? That's right. And then it would have to go to probate. It would go to probate court, and Mr. Yagman is the beneficiary. Sometimes people, when they enter into agreements, have to be sure that there's title. And that wasn't done here by anybody. And it was actually an abuse by the government to ever have had those funds there in the first place. Thank you, everyone. Thank you. The matter is submitted. Thank you, counsel.
judges: Tashima, Paez, Friedman